# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **LYNDON WINN CARTER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:25-cv-01400** |
| | ) | **Judge Crenshaw/Frensley** |
| **AMAZON LOGISTICS, INC.,** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

In this action, Plaintiff Lyndon Winn Carter asserts causes of action under 42 U.S.C. §§ 1981 and 1983 against Defendant Amazon Logistics, Inc. ("Amazon") related to Mr. Carter's participation in the Amazon Flex program. Docket No. 1. Mr. Carter seeks damages for race-based discrimination and retaliation, deprivation of civil rights under color of law, unjust enrichment, innovation theft/IP misappropriation, intentional infliction of emotional distress, and failure to investigate harassment. Id. at 3. This matter comes before the Court on Amazon's Motion to Compel Arbitration ("Motion"). Docket No. 9.[1] Mr. Carter has filed a response in opposition, a "supplemental opposition," and a "response and opposition to the Declaration of Carolyn Love." Docket Nos. 12, 12-1, 14. Amazon has filed a reply. Docket No. 16. For the reasons set forth below, the undersigned recommends Amazon's Motion to Compel Arbitration (Docket No. 9) be **GRANTED**.

### II. BACKGROUND

Amazon contracts with third-party contractors (called "Delivery Partners") through a

---

[1] Amazon has filed a Memorandum of Law in Support of its Motion to Compel Arbitration. Docket No. 10. Amazon has also filed the Declaration of Carolyn Love alongside its Memorandum. Docket No. 10-1.

smartphone application called Amazon Flex to deliver goods to Amazon's customers.  *See* Docket No. 10-1, p. 2.[2]  Through Amazon Flex, Delivery Partners use their personal vehicles to make local deliveries of groceries and other goods to customers.  Id.  To sign up, prospective Delivery Partners must download the Amazon Flex app onto their smartphone, create an account, and accept the Terms of Service ("TOS") before they can begin making deliveries.  Id. at 4. According to Amazon, the Amazon Flex app presents the TOS in its entirety to prospective Delivery Partners, who are free to review the terms before accepting and continuing with the sign-up process.  Id.  Prospective Delivery Partners must check a box next to the statement, "I agree to and accept the above" to be able to click "continue" and proceed with the sign-up process.  Id. at 4–5.  Then, the Amazon Flex app presents a new screen which separately sets forth an agreement to arbitrate for prospective Delivery Partners' review.  Id. at 6.  Prospective Delivery Partners must again check a box next to the statement, "I agree to and accept the above" before being able to hit "continue" and complete the sign-up process.  Id.  On March 3, 2022, Amazon alleges Mr. Carter signed up to make deliveries in the Nashville area by completing these steps.  Id. at 4.

The TOS contains the following arbitration provision:  "ANY DISPUTE OR CLAIM… ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM, OR TO YOUR PERFORMANCE OF SERVICES."  Id. at 14.  The TOS also contains a "Governing Law" provision that selects Delaware law to govern contracts with Delivery Partners

---

[2] Mr. Carter disputes Amazon's reliance on the Declaration of Carolyn Love.  Docket No. 14.  He asserts that it "fails to rebut Mr. Carter's good-faith pre-suit conduct," for which, he argues, Ms. Love lacks personal knowledge.  *See id.* (citation modified).  But Ms. Love does not claim to have personal knowledge of Mr. Carter's pre-suit demand letter.  See Docket No. 10-1.  Ms. Love testifies only to Amazon Flex operations, the Flex TOS, and Mr. Carter's involvement based on her familiarity with the Flex program and her access to Amazon's records.  Id.  Amazon's reliance on Ms. Love's Declaration is therefore not misplaced.

and specifies that Delaware law governs the arbitration provision if for some reason the Federal Arbitration Act ("FAA") is inapplicable.  Id. at 16.  The TOS delegates disputes over arbitrability to the arbitrator through an express provision stating that the "arbitrator must resolve… disputes about the arbitrability of claims" and by providing for arbitration under the Commercial Arbitrator Rules of the American Arbitration Association ("AAA").  Id. at 15.  The TOS gives prospective Delivery Partners 14 days to opt out of arbitration by sending an email to a specified email address. Id. at 9.  Amazon asserts it never received such an email from Mr. Carter and he therefore did not opt out of arbitration.  Id. at 6.

Mr. Carter filed his Complaint in this case on December 3, 2025.  Docket No. 1.  Mr. Carter alleges he "performed extensive work as an Amazon Flex delivery partner" and during the course of his work he developed the "Less is More" delivery model to assign fewer packages per driver to increase speed, reduce stress, and improve customer satisfaction, which he formally submitted to Amazon Flex corporate leadership through internal corporate channels.  Id. at 2.  Mr. Carter asserts Amazon "implemented the same concepts" of the "Less is More" strategy without Mr. Carter's involvement, acknowledgement, or compensation. Id. In addition to his claims for "innovation theft," "IP misappropriation," and unjust enrichment related to Amazon's use of the "Less is More" delivery model, Mr. Carter separately asserts that while performing services as an Amazon Flex Delivery Partner, he endured "systemic harassment and retaliation."  Id. at 2–3. Specifically, he alleges "sexual harassment by contract security on November 27, 2024," "retaliatory conduct by security head Gabriel and others: biased enforcement, manipulation of app metrics, threats of deactivation," and "false accusations of theft that harmed Mr. Carter's reputation and emotional well-being."  Id. at 2 (citation modified).  Based on these allegations, Mr. Carter asserts claims under 42 U.S.C. §§ 1981 and 1983 for racial discrimination, civil rights

violations, and intentional infliction of emotional distress.  Id. at 3.

Mr. Carter asserts that on December 19, 2024, prior to initiating this lawsuit, he submitted a demand letter for compensation and formal recognition related to the claims outlined above.  Id. He states that the letter asked Amazon to engage in a "constructive resolution," offering the company the opportunity to avoid litigation through appropriate remedial action.  Id.  But while Amazon's counsel expressly acknowledged receipt of the letter and stated the matter would be reviewed, Mr. Carter asserts Amazon has failed to respond with corrective action or in any other manner.  Docket No. 12, p. 1–2.  He states that he subsequently initiated this action after nearly one year of "Prolonged Silence."  Id. at 2.

Amazon now moves this Court to compel Mr. Carter to arbitrate his claims. Docket No. 9.

### III.    LAW AND ANALYSIS

### A.    Motions to Compel Arbitration Under the Federal Arbitration Act

The FAA provides that written agreements to arbitrate disputes arising out of commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract…" 9 U.S.C. § 2.  This provision reflects "a 'liberal federal policy favoring arbitration[.]'"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  However, arbitration remains " 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.' "  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

Under the FAA, anyone aggrieved by another's alleged failure or refusal to arbitrate under a written arbitration agreement may petition a federal district court for an order directing the parties

to proceed to arbitration in accordance with the agreement.  9 U.S.C. § 4.  The overarching question for a court in resolving a motion to compel arbitration is "whether the parties agreed to arbitrate the dispute at issue."  *Stout v. J. D. Byrider*, 228 F. 3d 709, 714 (6th Cir. 2000).  "When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks:"

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Id.  In making these determinations, the court must "examine the language of the contract in light of the strong federal policy in favor of arbitration" and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration."  Id.

Courts in deciding motions to compel arbitration "'treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party.'" *Green v. Mission Health Cmtys., LLC*, No. 3:20-cv-00439, 2020 WL 6702866, at *4 (M.D. Tenn. Nov. 13, 2020) (quoting *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014)).  The Supreme Court has held that parties may agree to arbitrate " 'gateway' questions of 'arbitrability,' such as [...] whether their agreement covers a particular controversy[,]'" "so long as the parties' agreement does so by 'clear and unmistakable' evidence."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–9 (2010); and then quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

If the party seeking to compel arbitration establishes the existence of a valid agreement to arbitrate and there is no genuine dispute, the court must grant the motion to compel arbitration and stay or dismiss the proceedings until the completion of the arbitration.  *Glazer v. Lehman Bros.,*

*Inc.*, 394 F. 3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4).  The FAA provides as follows

regarding staying proceedings that are referable to arbitration:

> The court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

### B. Amazon's Motion to Compel Arbitration

Amazon asserts that the parties' agreement to arbitrate is valid and enforceable.  Docket

No. 10, p. 11.  Amazon asserts that Mr. Carter unambiguously manifested his willingness to

arbitrate when he checked a box next to the statement, "I agree to and accept the above" after being

presented with the TOS and the arbitration agreement in the Amazon Flex app.  Id. at 11–12.

Amazon further asserts that Mr. Carter's claims fall within the broad scope of the TOS's arbitration

provision, and in any event the agreement delegates such disputes over arbitrability to an arbitrator,

both by providing in § 11(j) of the agreement that an arbitrator must resolve any dispute over the

arbitrability of claims under Section 11(a) and by incorporating the American Arbitration

Association's (AAA) Commercial Arbitration rules.[3]  Id. at 13.  Amazon also asserts the arbitration

provision is enforceable under either federal or state law.  Id. at 15.  The FAA compels enforcement

of the arbitration provision, Amazon argues, because the statute's carveouts for (a) "contracts of

employment of seamen, railroad employees, or any other class of workers engaged in foreign or

interstate commerce," 9 U.S.C. § 1, and (b) allegations "constituting a sexual harassment dispute,"

---

[3] The AAA Commercial Arbitration rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Docket No. 10, p. 13-14.

9 U.S.C. § 402(a), are inapplicable.  *Id.* at 16–17.

Amazon asserts Mr. Carter's claims are not exempt under the FAA's carveout for workers engaged in foreign and interstate commerce because he belongs to a class of local delivery workers who do not engage in interstate commerce.  Id. at 17.  Amazon states that Amazon Flex deliveries often include goods that are already in the same state as the customer at the time they are ordered, and Amazon Flex Delivery Partners play no role in long-haul transportation of such goods across state lines.  Id. at 18.  Even if the goods delivered by Mr. Carter and other Amazon Flex Delivery Partners were transported through interstate commerce as part of Amazon's broader business, Amazon argues that Amazon Flex deliveries are performed only after the goods have made it to Tennessee.  Id. at 19–20.  Thus, Amazon asserts Mr. Carter is not part of a class of workers directly engaged in the interstate transportation of goods, and his agreement to arbitrate is not exempt from the FAA.  Id. at 21.  Amazon asserts that an exemption under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA) is also inapplicable.  Id.;  see also 9 U.S.C. § 402(a).  Amazon argues that Mr. Carter's "barebones, conclusory" Complaint does not provide any factual allegations to support his assertion of sexual harassment, he fails to plausibly allege a sexual harassment claim.  Id. at 21–22.  With no plausible sexual harassment claim, Amazon says the EFAA does not apply.  Id. at 22.  Finally, Amazon asserts that because Mr. Carter is bound by his agreement to arbitrate all claims against Amazon under either the FAA or state law, the Court should stay Mr. Carter's claims and compel arbitration.  Id. at 25.

In response, Mr. Carter disputes neither the validity and scope of the arbitration agreement nor any potentially applicable exemption to the FAA and instead asserts that Amazon waived the parties' agreement to arbitrate when it failed to invoke arbitration in response to his December 26, 2024 demand letter.  *See* Docket No. 12, p. 3.  Mr. Carter further asserts that Amazon is equitably

estopped from invoking arbitration after inducing his reliance through prolonged, "strategic" silence. Id. He states that Amazon failed to comply with its own pre-suit notice and cure requirements because while the arbitration provision requires advance written notice of any potential claims and an opportunity to cure prior to initiating arbitration, Amazon failed to act on the notice Mr. Carter provided. Id. at 4. Finally, Mr. Carter asserts he acted in good faith and sought judicial relief only after informal remedies were exhausted. Id. Thus, he asserts that forcing arbitration at this stage would undermine contract and equity principles by rewarding delay in contradiction of the FAA's intent. Id. Mr. Carter asks this Court to deny Amazon's motion to compel arbitration and permit his action to proceed before a judicial arbiter. Id.

In reply, Amazon reiterates that the parties' agreement to arbitrate is valid and enforceable and asserts that Amazon timely moved to compel arbitration. Docket No. 16, pp. 2–3. Amazon asserts there is no waiver, as courts within the Sixth Circuit have consistently rejected waiver arguments premised on pre-litigation correspondence and Amazon did not attempt to impede Mr. Carter's ability to initiate arbitration. Id. at 3–4. Amazon states that Mr. Carter's appeal to "fairness" provides no basis to avoid his contractual obligation to arbitrate because the TOS imposed no obligation on Amazon as the non-aggrieved party to take any action in response to Mr. Carter's notice, and Amazon did not delay invoking arbitration once Mr. Carter initiated suit. Id. at 4.

The Court finds that the parties' agreement to arbitrate is valid and enforceable. The Court finds that the parties agreed to arbitrate, as Mr. Carter does not dispute that he agreed to the TOS or that he agreed to work as an Amazon Flex Delivery Partner. See Docket No. 12. Under either Delaware or Tennessee contract principles, Mr. Carter agreed to the TOS and the arbitration provision when he affirmatively checked the box next to "I agree to and accept the above" in the

Amazon Flex app while signing up to make Amazon Flex deliveries. *See* Docket No. 10, p. 2. Courts in Delaware and Tennessee have previously recognized the validity of "clickwrap" agreements similar to the one at issue in this case. *See Payne v. Samsung Elecs. Am., Inc.,* No. N23C-03-193, 2024 WL 726907, at *1, *3 (Del. Super. Ct. Feb. 21, 2024); *Williams v. Experian Info. Solutions, Inc.*, No. 24-cv-12908, 2025 WL 2983141, at *1, *9 (E.D. Mich. Oct. 22, 2025). *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1276 (M.D. Tenn. 2020). Indeed, courts within the Sixth Circuit have previously enforced the Amazon Flex arbitration agreement and the choice-of-law provision at issue here. *See Walker v. Amazon Logistics, Inc.*, 809 F. Supp. 3d 749, 754–55 (N.D. Ohio Oct. 15, 2025); *McBratnie v. Amazon.com, Inc.*, 2025 WL 2048328, at *1, *6 (E.D. Mich. Jul. 22, 2025). Mr. Carter had an opportunity to opt out of arbitration by sending an email to a specified email address, but he failed to do so. *See* Docket No. 10-1, p. 6. And while the TOS appears to delegate threshold issues of arbitrability to the arbitrator, including whether Mr. Carter's claims fall within the scope of the arbitration agreement, *see id.* at 15, the Court finds that Mr. Carter's claims easily fall within the broad scope of the arbitration agreement. Mr. Carter's claims arise directly out of his relationship with Amazon and out of incidents that allegedly occurred at Amazon delivery stations while performing services as a Flex Delivery Partner. *See* Docket No. 1.

Although Mr. Carter does not assert that he qualifies for an exemption to the FAA, the Court also finds that none of the potentially applicable exemptions, including for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, and for allegations "constituting a sexual harassment dispute," 9 U.S.C. § 402(a), apply to Mr. Carter's dispute with Amazon. *See* Docket No. 12. The Section 1 exemption is inapplicable because Mr. Carter belongs to a class of local delivery drivers who do

not engage in interstate commerce. To be engaged in interstate commerce, a class of workers must "play a direct and 'necessary role in the free flow of goods' across borders." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). Amazon Flex Delivery Partners primarily deliver goods that are already in the same state as the customer at the time they are ordered, and even when they are not, Delivery Partners do not play a role in the long-haul transportation of those goods across state lines. *See* Docket No. 10-1, p. 3. Although some courts have determined that the Amazon Flex TOS falls within the Section 1 exemption, *see Rittmann v. Amazon.com, Inc.*, 971 F. 3d 904 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F. 3d 10, 26 (1st Cir. 2020), there is no binding Sixth Circuit precedent adopting those cases and lower courts within Sixth Circuit have found that the Section 1 exemption does not apply to Amazon Flex Delivery Partners. *See Walker*, 809 F. Supp. 3d at 758.

Mr. Carter also may not avail himself of the exemption for claims involving "sexual harassment dispute[s]." *See* 9 U.S.C. § 402(a). A majority of district courts have concluded that satisfying this exemption precludes arbitration of an entire case, "so long as the complaint includes a plausible sexual harassment/assault claim." *Parks v. Nordson Med. of NH, Inc.*, No. 1:25-cv-138, 2025 WL 2177177, at *1, *5 (E.D. Tenn. Jul. 31, 2025).[4] Mr. Carter's conclusory allegation that he endured "[s]exual harassment by contract security on November 27, 2024" does not plausibly meet the "high threshold" for sexual harassment claims. *See id.* at *6. He provides no information on specific conduct that was allegedly harassing or how it was based on Mr. Carter's sex. *See* Docket No. 1, p. 2. Nor does Mr. Carter attempt to plausibly allege that the harassment was

---

[4] *Parks* deals directly with the EFAA. The EFAA amends the FAA to create an exemption for claims constituting "a sexual harassment dispute or sexual assault dispute," even if the individual previously agreed to arbitrate such claims if they arose. *See also Memmer v. United Wholesale Mortgage, LLC*, 135 F. 4th 398, 406 (6th Cir. 2025).

sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *See id.*; *Parks*, 2025 WL 2177177, at *5–*6. Both potentially applicable exemptions are inapposite, and Mr. Carter's claims are arbitrable under the FAA.

Mr. Carter's own arguments based on waiver, equity, and fairness are similarly unavailing. *See* Docket No. 12. Mr. Carter's assertion that Amazon was required to initiate arbitration in response to his demand letter finds no support in the case law or the TOS. *See id.* at 3. Courts within the Sixth Circuit have previously rejected waiver arguments premised on pre-litigation correspondence similar to Mr. Carter's demand letter. *See JPD, Inc. v. Chronimed Holdings, Inc.,* 539 F. 3d 388, 393–94 (6th Cir. 2008). The TOS requires only the "aggrieved party" to provide notice of potential claims and "at least 30 days in which to cure." *See* Docket No. 10-1, pp. 14–15. It imposes no obligation on Amazon as the non-aggrieved party to take any action in response to such notice. Mr. Carter's reliance on authority addressing judicial estoppel is inapposite because Amazon has not taken any inconsistent positions in this litigation. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Although Mr. Carter does appear to be acting in good faith and has complied with the TOS's pre-suit notice and cure requirements, Amazon timely moved to compel arbitration within two months of Mr. Carter filing his Complaint in its first responsive filing. Docket No. 9. And as the parties' agreement requires arbitration of "any dispute or claim… arising out of or relating in any way to this agreement," Amazon was entitled to do so.

When a party seeking to compel arbitration establishes the existence of a valid agreement to arbitrate and there is no genuine dispute, the court must grant the motion to compel arbitration and stay or dismiss the proceedings until the completion of arbitration proceedings. *Glazer,* 394 F. 3d at 451. As Amazon requests only a stay of Mr. Carter's claims pending the outcome of arbitration proceedings, the Court will act accordingly.

### III. CONCLUSION

For the reasons stated above, the undersigned recommends Amazon's Motion to Compel Arbitration (Docket No. 9) be **GRANTED** and that this matter is stayed and administratively closed pending resolution of arbitration proceedings between the parties.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**